## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WILDEARTH GUARDIANS

      Plaintiff,

   v.

BOB PERCIASEPE, in his official capacity as Acting Administrator
of the United States Environmental Protection Agency

      Defendant.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1.     Fine particulate matter air pollution, referred to as particulate matter less than 2.5 microns in diameter (" $PM_{2.5}$ "), poses myriad health risks including premature death, heart attacks, strokes, increased hospital admissions, asthma attacks, and reduced lung function, particularly among children and those with lung diseases.  To safeguard public health, in 2006 the United States Environmental Protection Agency ("EPA") promulgated a National Ambient Air Quality Standard ("NAAQS") for $PM_{2.5}$.  This NAAQS sets an allowable limit on concentrations of $PM_{2.5}$ in the air we breathe to no more than 35 micrograms per cubic meter over a 24-hour period (referred to as the "24-hour $PM_{2.5}$ NAAQS").

2.     In 2009, EPA identified areas of the U.S. that were in violation of the 24-hour $PM_{2.5}$ NAAQS.  Among the areas failing to meet the NAAQS were portions of Franklin County in southern Idaho and Cache, Box Elder, Weber Davis, Salt Lake, Tooele, and Utah Counties in

Utah (hereafter referred to as the "Idaho and Utah PM$_{2.5}$ nonattainment areas").  EPA designated these areas as "nonattainment," or in violation of the 24-hour PM$_{2.5}$ NAAQS.

3.      The Clean Air Act requires that PM$_{2.5}$ nonattainment areas be brought into compliance with the NAAQS as expeditiously as practicable.  Key to this, States must submit state implementation plans ("SIPs") to the EPA prescribing measures to limit pollution, monitor and enforce compliance, and meet the NAAQS.  States must submit such SIPs to EPA within 18 months after EPA makes a nonattainment designation.  EPA must review these SIPs to ensure they meet the Clean Air Act and will attain the NAAQS.  EPA's decisions to approve, disapprove, or partially disapprove SIPs is done through a federal rulemaking process.  Where a State fails to submit a SIP, EPA is required to issue a formal warning no later than six months from the due date of a state's SIP submittal.  Such a finding triggers a two-year deadline by which the State must either submit an approvable SIP to EPA, or EPA must promulgate a federal implementation plan ("FIP").  In other words, states are responsible for cleaning up their air pollution, but where they fail to do so in a timely or adequate manner, EPA must do the job for them.

4.      Here, the Clean Air Act required the States of Idaho and Utah to submit SIPs to EPA by June 14, 2011 to bring their respective PM$_{2.5}$ nonattainment areas into compliance with the 24-hour PM$_{2.5}$ NAAQS.  The States failed to make these submissions.  Accordingly, by December 11, 2011 the EPA, through the Administrator, was required to make a finding of failure to submit the requisite SIPs.  It has been more than one year since this deadline passed and the EPA still has not made its mandatory finding.

5.      This suit challenges the failure of the Acting EPA Administrator (hereafter "Administrator" or "EPA") to perform a nondiscretionary duty under the Clean Air Act.  42

U.S.C. § 7604(a)(2). Plaintiff WildEarth Guardians ("Guardians") seeks to compel the Administrator to undertake his mandatory duty and ensure that the Idaho and Utah $PM_{2.5}$ nonattainment areas are cleaned up and public health is restored.

## JURISDICTION AND VENUE

6.      This is a Clean Air Act citizen suit against the Administrator where there is an alleged failure of the Administrator to perform a nondiscretionary act or duty under the Clean Air Act. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act).

7.      The requested declaratory and injunctive relief is authorized by 28 U.S.C. § 2201(a) (declaratory relief), 28 U.S.C. § 2202 (further relief), and 42 U.S.C. § 7604(a) (providing District Court jurisdiction to order Administrator to perform nondiscretionary duty).

8.      By letter dated January 10, 2013, Guardians provided the Administrator with written notice of the claims stated in this action. Guardians provided this notice pursuant to 42 U.S.C. § 7604(b)(2), and 40 C.F.R. §§ 54.2 and 54.3. More than 60 days have elapsed since Guardians gave notice. There exists between the parties an actual, justiciable controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(e)(1)-(3). EPA maintains a Regional Office in Denver, Colorado. This Regional Office oversees the State of Utah and is, in part, responsible for ensuring the EPA performs the nondiscretionary duty at issue in this Complaint. A substantial part of the events or omissions giving rise to Guardians' claims occurs in EPA's Denver office. Guardians also maintains a major office in Denver, Colorado.

**PARTIES**

10.     Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization. Guardians is dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding the Earth's climate and air quality.  Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment.

11.     Guardians is a non-profit corporation.  Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e).  Guardians may commence a citizen suit under the Clean Air Act, 42 U.S.C. § 7604(a).

12.     Guardians has approximately 7,538 members, many of whom live, work, or recreate in Idaho and Utah.  Many of Guardians' members live within or near the Idaho and Utah $PM_{2.5}$ nonattainment areas, including in Salt Lake City, Utah, Ogden, Utah, and Logan, Utah. These members recreate outdoors frequently, commute to work on bicycle, and depend on clean air for their quality of life.  These members are harmed by the failure of the Administrator to perform his nondiscretionary duty.  This harm stems primarily from the failure of the EPA to ensure that air quality is sufficiently protected in a timely manner.   This harm would be eliminated or reduced if EPA performed the nondiscretionary duty.

13.     The violation at issue in this complaint relates to the EPA's failure to ensure that the States of Idaho and Utah are cleaning up their $PM_{2.5}$ in accordance with statutory deadlines. Both Idaho and Utah have failed to meet required deadlines for submitting SIPs.  This failure delays Guardians' members the healthy air quality mandated by the Clean Air Act.  The SIPs required by the Clean Air Act require control measures to be implemented in $PM_{2.5}$ nonattainment areas by 2013 and that States attain the 24-hour $PM_{2.5}$ NAAQS by 2015.  EPA's

failure to perform its nondiscretionary duty means that these dates will slide at least by a year, but most likely longer.  By failing to ensure that SIPs are submitted in accordance with the Clean Air Act, EPA is denying Guardians' members the timely clean air that would otherwise result if EPA followed the statutory deadlines for action.

14.     For Guardians' members in or near the Idaho and Utah $PM_{2.5}$ nonattainment areas, the harm associated with EPA's failure to perform its nondiscretionary duty is very real. During this present winter, these areas experienced significantly elevated concentrations of $PM_{2.5}$ and exceeded the 24-hour $PM_{2.5}$ NAAQS on numerous occasions.  The air pollution in Salt Lake City was so severe that national media covered the story.  Guardians' members in and around Salt Lake City were forced to curtail their outdoor recreation, their bicycle commuting, and general outdoor activities during these air pollution episodes.  This air pollution will continue unabated so long as the EPA fails to ensure that effective SIPs, or FIPs, are in place to attain the NAAQS.

15.     The violation alleged in this Complaint also deprives Guardians and its members of certain procedural rights.  If EPA performed the nondiscretionary duty at issue in this Complaint, it would trigger a two-year timeline during which EPA would either have to approve a SIP, adopt a FIP, or partially approve a SIP and partially adopt a FIP.  Any action on a SIP or promulgation of a FIP would be subject to public notice and opportunity to comment in accordance with federal rulemaking requirements.  Thus, Guardians and its members would have an opportunity to weigh in on the adequacy of any SIP or FIP and influence the outcome of EPA's ultimate rulemaking.

16.     The violations alleged in this Complaint have injured and continue to injure the interests of Guardians and its members.  This injury is traceable to EPA's failure to perform a

nondiscretionary duty. Granting the requested relief would redress these injuries by compelling EPA action that Congress determined to be an integral part of the regulatory scheme for attaining the NAAQS.

17. Defendant BOB PERCIASEPE is the Acting Administrator of the United States Environmental Protection Agency. Mr. Perciasepe is sued in his official capacity. The Administrator is charged with implementation and enforcement of the Clean Air Act, including the carrying out of nondiscretionary duties under the Clean Air Act. Mr. Perciasepe is currently Acting Administrator while a new EPA Administrator awaits confirmation by the U.S. Senate. He is therefore responsible for performing the duties of the Administrator in the meantime.

## LEGAL FRAMEWORK

18. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the NAAQS. See 42 U.S.C. § 7401 et seq. This partnership is intended to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, at 1 (1970), reprinted in 1970 U.S.C.C.A.N. 5356, 5356. Towards this end, EPA has set NAAQS for seven pollutants. See 40 C.F.R. §§ 50.4-50.17. NAAQS are standards, the attainment and maintenance of which, are requisite to the protection of public health and welfare. See 42 U.S.C. §§ 7409(b)(1) and (2). The NAAQS must be reviewed and, if appropriate, revised every five years. See 42 U.S.C. § 7409(d)(1).

19. Within two years of the revision of a NAAQS, the EPA must identify areas of the U.S. where air quality does not meet the standard. See 42 U.S.C. § 7407(d)(1)(B). Areas that are meeting the NAAQS are designated as "attainment" whereas areas that are not meeting the NAAQS are designated as "nonattainment." 42 U.S.C. §§ 7407(d)(1)(A)(i) and (ii).

20.     Upon revision of a NAAQS, States, or regions within a state, must adopt SIPs containing enforceable emissions limitations necessary to attain the NAAQS and meet applicable requirements of the Clean Air Act, including, among other things, ensuring attainment, maintenance, and enforcement of the NAAQS.  See e.g. 42 U.S.C. §§ 7410(a)(1) and (a)(2).  All such SIPs must be submitted to EPA, reviewed by EPA for their consistency with the Clean Air Act, and either approved, disapproved, or partially approved and partially disapproved by EPA. See 42 U.S.C. §§ 7410(a)(1), (k), and (l).

21.     For nonattainment areas, the Clean Air Act provides specific deadlines and requirements for SIPs to ensure that the NAAQS are attained and ultimately that "nonattainment" areas can be redesignated as "attainment" areas.  These requirements are set forth under Part D of the Clean Air Act.  See 42 U.S.C. § 7501, et seq.  Beneath Part D are Subparts 1 through 6.  Subpart 1 sets forth general requirements for SIPs that are applicable to all nonattainment areas for any NAAQS.  See 42 U.S.C. §§ 7501-7509a.  Subparts 2 through 6 set forth more specific requirements for nonattainment areas, depending on the nature of the NAAQS.  Part D, Subpart 4 (referred to through this Complaint as "Subpart 4") sets forth specific requirements for areas designated nonattainment for particulate matter NAAQS.  See 42 U.S.C. §§ 7513-7513b.

22.     Subpart 4 generally has a twofold approach to addressing particulate matter pollution.  First, it requires that nonattainment areas be classified as "moderate" or "serious," depending on the severity of the air pollution problem.  See 42 U.S.C. § 7513.  Under Subpart 4, areas designated as nonattainment are classified at the time of designation by operation of law as moderate nonattainment areas.  See 42 U.S.C. § 7513(a).  If an area subsequently fails to attain by the required date, the EPA must reclassify the nonattainment area to "serious."  See 42 U.S.C.

7

§ 7513(b).  The SIP requirements for "serious" particulate matter nonattainment areas are more stringent than those for "moderate" areas.

23.     Secondly, Subpart 4 sets forth requirements for States to develop and submit SIPs to EPA to ensure that nonattainment areas are brought into attainment by dates certain.  For nonattainment areas initially classified as moderate, States must submit a SIP within 18 months of the date of designation.  See 42 U.S.C. § 7513a(a)(2)(B).  Among other things, the SIP must demonstrate that the NAAQS will be attained within six years of the nonattainment designation, include provisions assuring that reasonably available pollution control measures are implemented within four years of the nonattainment designation, and contain quantitative milestones that are to be achieved every three years until the area is redesignated as attainment, or in compliance with the NAAQS.  See 42 U.S.C. §§ 7513(d)(1), 7513a(a)(1)(B), 7513a(a)(1)(C), and 7513a(c).

24.      Under the Clean Air Act, EPA is required to make a finding as to whether a State has submitted a required SIP no later than six months after the date by which the State was required to submit such a SIP.  42 U.S.C. § 7410(k)(1)(B).  If EPA finds that a State has failed to make the required SIP submission, the EPA has two years by which it must promulgate a FIP or approve the required SIP, in whole or part.  42 U.S.C. § 7410(c)(1)(A).  A FIP is "a plan (or portion thereof) promulgated by [EPA] to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP], and which includes enforceable emission limitations or other control measures, means or techniques (including economic incentives, such as marketable permits or auctions of emissions allowances), and provides for attainment of the relevant [NAAQS].  42 U.S.C. § 7602(y).

25.     If EPA fails to comply with a nondiscretionary duty, including performing its duty to make a finding that Utah and Idaho failed to submit the requisite $PM_{2.5}$ SIPs, the Clean

8

Air Act allows any person to bring suit to compel EPA to perform its duty.  See 42 U.S.C. § 7604(a)(2).

## FACTUAL ALLEGATIONS

26.    The EPA signed final revisions to the $PM_{2.5}$ NAAQS on September 21, 2006, adopting a new standard limiting concentrations to no more than 35 micrograms per cubic meter over a 24-hour period.  See 71 Fed. Reg. 61,144 (October 16, 2006).  $PM_{2.5}$ includes all particles less than 2.5 microns in diameter.  Id.  Although $PM_{2.5}$ can be directly emitted, it can also form in secondary reactions in the atmosphere.  See http://www.epa.gov/pmdesignations/basicinfo.htm (last viewed May 6, 2013).  According to EPA, the health effects of $PM_{2.5}$ include: increased respiratory symptoms, such as irritation of the airways, coughing, or difficulty breathing; decreased lung function; aggravated asthma; development of chronic bronchitis; irregular heartbeat; nonfatal heart attacks; and premature death.  See U.S. EPA, Health and Environmental Effects of $PM_{2.5}$, available at http://www.epa.gov/particles/health.html (last viewed May 6, 2013).

27.    Pursuant to the Clean Air Act, the EPA established air quality designations for the United States, identifying which areas of the country were or were not attaining the revised 24-hour $PM_{2.5}$ NAAQS.  See 74 Fed. Reg. 58,688-781 (Nov. 13, 2009).[1]  Among the areas identified as not attaining the NAAQS were portions of the State of Utah and a portion of southern Idaho.  See 40 C.F.R. §§ 81.313 and 81.345.  These nonattainment areas were identified as the Logan, Utah area, the Provo Utah area, and the Salt Lake City, Utah area (hereafter the "Utah/Idaho $PM_{2.5}$ Nonattainment Areas"), and encompassed portions of Utah, Salt Lake, Davis,

---

[1] The designations were signed on October 8, 2009 and published in the Federal Register on November 13, 2009.  According to the rule, the effective date of the designations was December 14, 2009.

Tooele, Weber, Box Elder, and Cache Counties, Utah, and Franklin County, Idaho.  See EPA

Map Below (available at http://www.epa.gov/oaqps001/greenbk/utid25b.html (last viewed May

6, 2013).



28.     For the 24-hour $PM_{2.5}$ NAAQS, the U.S. Court of Appeals for the D.C. Circuit

recently held that the requirements of Part D, Subpart 4 of the Clean Air Act govern how $PM_{2.5}$

nonattainment areas are to be brought into attainment.  See NRDC et al. v. EPA, 706 F.3d 428

(D.C. Cir. 2013).

29.     Consistent with Subpart 4, the Idaho and Utah $PM_{2.5}$ nonattainment areas were

classified by law as "moderate" nonattainment areas upon the date of their designation.  Pursuant

to Subpart 4 requirements for moderate nonattainment areas, the States of Utah and Idaho were obligated to submit SIPs by June 14, 2011, or 18 months after the effective date of their respective nonattainment designations.  Also pursuant to Subpart 4, these SIPs were required to ensure attainment with the 24-hour $PM_{2.5}$ NAAQS by December 14, 2015, implement reasonably available control measures by December 14, 2013, and contain quantitative milestones to be achieved every three years until the areas are redesignated as attainment.

30.     Neither Idaho nor Utah has submitted SIPs to meet the requirements of Subpart 4. According to EPA's "Status of SIP Requirements for Designated Areas" website, neither Utah nor Idaho have submitted SIPs to fully meet the requirements of Subpart 4.  See Status of SIP Requirements for Designated Areas for Utah and Idaho, available at

http://www.epa.gov/air/urbanair/sipstatus/reports/ut_areabypoll.html#pm-2.5__2006_ and

http://www.epa.gov/air/urbanair/sipstatus/reports/id_areabypoll.html#pm-2.5__2006_ (last viewed May 6, 2013).  Notably, among other things, neither State has submitted a SIP demonstrating that the 24-hour $PM_{2.5}$ NAAQS will be attained by December 14, 2015 in accordance with 42 U.S.C. § 7513a(a)(1)(B), implementing reasonably available control measures by December 14, 2013 in accordance with 42 U.S.C. § 7513a(a)(1)(C), or containing quantitative milestones to be met every three years until the areas are redesignated as attainment.

31.     In accordance with the Clean Air Act, EPA was required to make a finding that both Utah and Idaho failed to make the SIP submissions required by Subpart 4 no later than December 14, 2011.  The EPA has not made such a finding.  Therefore, EPA is in violation of a nondiscretionary duty under the Clean Air Act.

## **CLAIM FOR RELIEF**

(EPA's Failure to Make a Finding that Idaho and Utah Have Failed to Submit Required SIPs)

32.     Guardians hereby incorporates by reference all allegations in the proceeding paragraphs.

33.     In accordance with Part D, Subpart 4 of the Clean Air Act, the States of Idaho and Utah were required to submit SIPs to attain the 24-hour $PM_{2.5}$ NAAQS in the Idaho and Utah $PM_{2.5}$ nonattainment areas.

34.     Idaho and Utah were required to submit SIPs to meet the requirements of Subpart 4 within 18 months of the designation of their respective areas as nonattainment in accordance with 42 U.S.C. § 7513a(a)(2), therefore no later than June 14, 2011.

35.     Idaho and Utah failed to make the SIP submissions required by Subpart 4 by June 14, 2011.  As of the date of this Complaint, Idaho and Utah still have not submitted SIPs required by Subpart 4.

36.     Within six months after June 14, 2011, EPA was required by the Clean Air Act to make a finding of failure to submit.  42 U.S.C. § 7410(k)(1)(B).

37.     As of the date of this Complaint, EPA has not made a finding that Idaho and Utah have failed to submit the SIPs required by Subpart 4.

38.     Accordingly, EPA has violated and continues to violate its mandatory, nondiscretionary duty under 42 U.S.C. § 7410(k)(1)(B).

39.     This violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision.  42 U.S.C. § 7604(a)(2).  EPA's violation is ongoing and will continue unless the requested relief is granted by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare that Defendant has violated and is in violation of his mandatory, nondiscretionary, duty under 42 U.S.C. § 7410(k)(1)(B) to make a finding that Idaho and Utah have failed to submit the SIPs required by Part D, Subpart 4 of the Clean Air Act;

B.    Order Defendant to perform by a date certain his mandatory, nondiscretionary, duty under 42 U.S.C. § 7410(k)(1)(B) to make a finding that Idaho and Utah have failed to submit the required SIPs to ensure attainment of the 24-hour $PM_{2.5}$ NAAQS in the Idaho and Utah $PM_{2.5}$ nonattainment areas in accordance with Subpart 4;

C.    Grant Plaintiff's costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); and

E.    Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted this 15th day of May, 2013.

/s/ Samantha Ruscavage-Barz          /s/ James Jay Tutchton
NM Bar. No. 23276                    CO Bar No. 21138
WildEarth Guardians                  WildEarth Guardians
516 Alto Street                      6439 Maplewood Ave.
Santa Fe, NM 87501                   Centennial, CO 80111
(505) 401-4180                       (720) 301-3843
sruscavagebarz@wildearthguardians.org  jtutchton@wildearthguardians.org

*Attorneys for Plaintiff WildEarth Guardians*