**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Case No. 13-cv-1275-WJM-KMT

WILDEARTH GUARDIANS,

      Plaintiff,

v.

GINA MCCARTHY, in her official capacity as Administrator of the United States
Environmental Protection Agency,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

      Plaintiff Wildearth Guardians brings this action against the Administrator for the

Environmental Protection Agency ("EPA"), Gina McCarthy ("Defendant").  (ECF No. 1.)

This case is brought pursuant to Section 304(a)(2) of the Clean Air Act, which provides

that any person can sue the Administrator of the EPA "where there is alleged a failure

of the Administrator to perform any act or duty under this chapter which is not

discretionary."  42 U.S.C. § 7604(a)(2).

      Before the Court is Defendant's Motion to Dismiss ("Motion") for lack of subject

matter jurisdiction.  (ECF No. 8.)  For the reasons set forth below, the Motion is granted

and this action is dismissed without prejudice.

### I.  LEGAL STANDARD

      Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994).  Where Congress places limits on the jurisdiction

of federal courts, such limits "must be neither disregarded nor evaded." *Owen Equip. &*

*Erection Co. v. Kroger*, 437 U.S. 365, 375 (1978).

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## II.  BACKGROUND

Congress enacted the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401–7671q, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." *Id*. at § 7401(b)(1). In 1970, Congress enacted broad-sweeping amendments to the CAA to "guarantee the prompt attainment and maintenance of specified air quality standards." *Ak. Dep't of Env. Conservation v. EPA*, 540 U.S. 461, 469 (2004) ("ADEC"). It imposed numerous mandatory deadlines on the EPA and created a citizen suit provision, 42 U.S.C. § 7604(a)(2), to allow the public to enforce those deadlines.

### A.    General Background on the CAA

As part of the CAA, Congress charged the EPA with setting National Ambient Air Quality Standards ("NAAQS") for certain pollutants. 42 U.S.C. § 7409. The NAAQS set

the maximum allowable air concentration for a particular pollutant and, every five years, must be reviewed and revised. *Id*. §§ 7408, 7409(b).  Within two years of the revision of a NAAQS, the EPA must identify areas in the United States that do not meet the standard, which are designated "non-attainment" areas. *Id*. §§ 7407(d)(1)(A)(i)-(ii).

Once a NAAQS is revised, each state must adopt and submit to the EPA for approval a State Implementation Plan ("SIP") that "provides for implementation, maintenance, and enforcement of [the NAAQS] in each air quality control region (or portion thereof) within such State." *Id*. § 7410(a)(1).  Each SIP must "include enforceable emission limitations and other control measures, means, or techniques . . . , as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the [CAA's] applicable requirements." *Id*. § 7410(a)(2)(A).  While certain components are universal in each SIP, the CAA affords the states discretion to create an appropriate plan, so long as the SIPs achieve the articulated standards for clean air. *Id*.

For non-attainment areas, the CAA provides specific deadlines and requirements for the SIPs, which are set forth in Part D of the CAA.  *See* 42 U.S.C. § 7501 *et seq*. Part D is broken down into six Subparts:  Subpart 1 sets forth general requirements for SIPs that are applicable to all non-attainment areas for any NAAQS, while Subparts 2-6 set forth more specific requirements for non-attainment areas, depending on the nature of the NAAQS that has not been met.  Relevant to this case, Subpart 4 applies to particulate matter NAAQS.  *See* 42 U.S.C. §§ 7513-7513b.  The deadline for submitting a SIP under Subpart 1 is no later than 3 years after designation as a non-attainment

area[1], while Subpart 4 requires that the SIP be submitted within 18 months of the designation.  *Compare* 42 U.S.C. § 7502(b) *with* § 7513a(a)(2)(B).

Between 1987 and 1997, the NAAQS applied only to air particles equal to or smaller than 10 micrometers ("$PM_{10}$").  *See* Revisions to the National Ambient Air Quality Standards for Particulate Matter, 52 Fed. Reg. 24,634, 24,639 (July 1, 1987).  However, in 1997, the EPA revised the particulate matter NAAQS, this time setting separate $PM_{2.5}$ standards for fine particles (having a diameter of 2.5 micrometers or less), while retaining the existing $PM_{10}$ standards.  *See* National Ambient Air Quality Standards for Particulate Matter, 62 Fed. Reg. 38,652, 38,654 nn. 5-6 (July 18, 1997).

In 2005, EPA published its Proposed Rule To Implement the 1997 Fine Particle National Ambient Air Quality Standards, 70 Fed. Reg. 65,984 (Nov. 1, 2005).  After notice and comment, the final Clean Air Fine Particle Implementation Rule ("Implementing Rule") was adopted on April 25, 2007.  *See* Clean Air Fine Particle Implementation Rule, 72 Fed. Reg. 20586 (April 25, 2007).  In the Implementing Rule, the EPA expressly followed the general provisions in Subpart 1 of Part D rather than Subpart 4's particulate-matter-specific provisions.  *Id*. at 20,589 ("EPA is issuing this rule to implement the 1997 $PM_{2.5}$ NAAQS in accordance with the statutory requirements of the CAA set forth in Subpart 1 of Part D of Title 1, *i.e.*, sections 171-179B of the Act. . . .  EPA has concluded that Congress did not intend the Agency to implement particulate matter NAAQS other than those using $PM_{10}$ as the indicator in accordance

---

[1]  The CAA directs the EPA to "establish a schedule" for a state to submit its SIP, but mandates that the deadline can be no later than 3 years after designation as a non-attainment area.  42 U.S.C. § 7502(b).

with Subpart 4 of Part D of Title 1 . . . ."). Thus, the EPA explicitly directed states to submit their PM$_{2.5}$ SIPs in accordance with the requirements and timing set forth in Subpart 1.

A number of environmental organizations filed a petition challenging the EPA's decision to promulgate the Implementing Rule pursuant to the provisions of Subpart 1 rather than Subpart 4. In *National Resources Defense Council et al. v. EPA*, 706 F.3d 428 (D.C. Cir. 2013) ("*NRDC* Decision"), the United States Court of Appeals for the D.C. Circuit held that the Implementing Rule ignored the plain meaning of the CAA because Subpart 4's reference to PM$_{10}$, which includes all particles less than ten micrometers in diameter, necessarily included all PM$_{2.5}$ particles since they are smaller than ten micrometers in diameter. *Id*. at 435. Thus, by the CAA's express terms, Subpart 4 governed the SIPs for PM$_{2.5}$ non-attainment areas. *Id*. Based on this interpretation of the CAA, the court granted the petition and remanded the case to the EPA to "re-promulgate these rules pursuant to Subpart 4." *Id*. at 437. The court declined the plaintiff's request to set a deadline for the EPA to act. *Id*. at 437 n.10.

On November 21, 2013, the EPA issued its proposed rule clarifying PM$_{2.5}$ implementation requirements in response to the *NRDC* decision. *See* Identification of Nonattainment Classification and Deadlines for Submission of State Implementation Plan (SIP) Provisions for the 1997 Fine Particle (PM$_{2.5}$ ) National Ambient Air Quality Standard (NAAQS) and 2006 PM$_{2.5}$ NAAQS, 78 Fed. Reg. 69806-01 (Nov. 21, 2013). This proposed rule sets a deadline of December 31, 2014 for submission of PM$_{2.5}$ SIPs that comply with the requirements in Subpart 4. *Id*.

5

**B.     Factual Background for this Action**

In September 2006, the EPA finalized revisions to the PM$_{2.5}$ NAAQS.  (Am.

Compl. ¶ 1.)  In November 2009, the EPA designated portions of Idaho and Utah as

non-attainment areas; these designations became final on December 14, 2009. (*Id*.

¶¶ 2, 33.)  As of September 11, 2013, neither Idaho nor Utah had submitted PM$_{2.5}$ SIPs

which satisfied either Subpart 1 or Subpart 4.   Therefore, Plaintiff brought this action

alleging that the EPA had failed to make the required finding that these states had

failed to submit timely SIPs, under either Subpart 4 (Claim One) or Subpart 1 (Claim

Two).  (*Id*. ¶¶ 39-54.)  After the Amended Complaint was filed, Idaho and Utah both

submitted SIPs pursuant to Subpart 1, which led to Plaintiff voluntarily dismissing Claim

Two.  (ECF No. 35.)  Thus, the only claim remaining in this case is whether the EPA

failed to make the required finding that Idaho and Utah had failed to timely submit PM$_{2.5}$

SIPs that satisfy Subpart 4.

### III.  ANALYSIS

Defendant moves to dismiss this action arguing that the Court does not have

subject matter jurisdiction because Plaintiff has not shown that this case falls within the

CAA's limited waiver of sovereign immunity.  (ECF No. 8 at 1.)  "It is axiomatic that the

United States may not be sued without its consent and that the existence of consent is

a prerequisite for jurisdiction."  *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463

(10th Cir. 1989).  Such consent "cannot be implied but must be unequivocally

expressed."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotation omitted).

Thus, where the defendant is a federal agency, a plaintiff must establish that Congress

has waived sovereign immunity for the particular claim at issue.

The CAA's citizen suit provision waives sovereign immunity for certain specific claims against the EPA.  42 U.S.C. § 7604(a).  Pertinent to this case, sovereign immunity is waived for lawsuits alleging that the EPA missed a statutorily-imposed, non-discretionary deadline.  *See* 42 U.S.C. § 7604(a)(2); *see also Mountain States Legal Found. v. Castle*, 630 F.2d 754, 766 (10th Cir. 1980) (finding that, by enacting section 304(a)(2), Congress "restricted citizens' suits to actions seeking to enforce specific non-discretionary clear-cut requirements of the Clean Air Act."); *Farmers Union Cent. Exchange, Inc. v. Thomas*, 881 F.2d 757, 760 (9th Cir. 1989) (explaining that only violations of "clear-cut" non-discretionary duties give rise to jurisdiction under the citizen-suit provision).  Thus, in order for this case to fall within the limited waiver of sovereign immunity, Plaintiff must show that it is seeking to enforce a specific non-discretionary duty with which the EPA failed to comply.

Section 110(k)(1)(B) of the CAA requires the EPA to make a finding that a state's SIP is complete or incomplete within 2 months of submission.  42 U.S.C. § 7410(k)(1)(B).  If no SIP is submitted, the EPA must make a deficiency finding no later than 6 months after the submission deadline.  *Id*.  Unless a complete SIP is approved within 2 years after the EPA issues its deficiency finding, the state loses its right to implement its own plan, and the EPA must promulgate a Federal Implementation Plan.  42 U.S.C. § 7410(c)(1).

Plaintiff contends that the EPA has failed to perform its non-discretionary duty to make a finding that Utah and Idaho (together "the States") failed to submit timely SIPs to the EPA in accordance with Subpart 4.  (ECF No. 13 at 9.)  Plaintiff alleges that,

7

since the *NRDC* Decision made it clear that the requirements of Subpart 4 "have always governed" SIPs submitted in response to the 2007 declaration of $PM_{2.5}$ non-attainment areas, the States' SIPs should have been submitted within 18 months of the non-attainment designation, or no later than June 14, 2011. (*Id*. at 11.) Because it is undisputed that the States did not submit their $PM_{2.5}$ SIPs by June 14, 2011, Plaintiff argues that the EPA was required to make a finding of non-compliance no later than December 14, 2011. (*Id*. at 13.) Plaintiff contends that the EPA's failure to make a deficiency finding violates its mandatory, non-discretionary duty under 42 U.S.C. § 7410(k)(1)(B), such that this case falls within the CAA's limited waiver of sovereign immunity. (*Id*. at 3.)

The EPA argues that its duty under 42 U.S.C. § 7410(k)(1)(B) is only triggered if a state has an obligation to submit an SIP by a date certain and fails to do so. (ECF No. 19 at 3.) The EPA contends that, because the Implementing Rule specified that the States did not have to submit their $PM_{2.5}$ SIPs until 3 years after designation as a non-attainment area—which would have been December 14, 2012—the States' failure to submit their $PM_{2.5}$ SIPs by June 14, 2011 did not trigger § 7410(k)(1)(B). (*Id*.) The EPA therefore argues that sovereign immunity has not been waived and the Court lacks subject matter jurisdiction.

The parties have failed to cite, and the Court has been unable to locate, any decision discussing a situation similar to this. The Court sees some merit to each of the parties' arguments. However, the Court is compelled to rule in favor of the EPA for two reasons: (1) the *NRDC* Decision did not vacate the Implementing Rule, which compels

the conclusion that the D.C. Circuit did not intend for its decision to be applied in a retroactive manner; and (2) the overall structure of the CAA, particularly with regard to the balance of the duties between the states and the federal government set forth in the pertinent portions of the statute.  The Court will address each of these issues in turn below.

The primary basis for the Court's finding that the EPA did not fail to perform a non-discretionary duty comes from the *NRDC* Decision itself.  Although the D.C. Circuit Court of Appeals held that the EPA had misconstrued the CAA by implementing the rules governing submission of PM$_{2.5}$ SIPs under Subpart 1 rather than Subpart 4, it did not vacate the Implementing Rule or direct the EPA to take immediate action to ensure that all PM$_{2.5}$ SIPs were submitted pursuant to Subpart 4.  *See NRDC Decision*, 706 F.3d at 437.  In fact, the court declined the plaintiffs' invitation to set a deadline for the EPA to re-promulgate the rules governing PM$_{2.5}$ SIPs.  *Id*.  As the D.C. Circuit is well aware that re-promulgation of an EPA rule requires the agency to go through the entire rulemaking process, the court undoubtedly envisioned that there would be some delay before its ruling took effect and states were required to file PM$_{2.5}$ SIPs in accordance with Subpart 4.  This indicates that the *NRDC* court intended its decision to be prospective in effect, rather than retroactive.

The *NRDC* court's hesitance to impose retroactive obligations on the states and the EPA has a long history of support in the cases interpreting the CAA.  For example, in *Sierra Club v. Whitman*, 285 F.3d 63 (D.C. Cir. 2002), the D.C. Circuit had to decide the effective date of the EPA's determination that the St. Louis metropolitan area did

9

not meet its attainment deadline. Petitioners urged the court to make the EPA's non-attainment determination effective as of the date that the statute required, rather than the later date on which the EPA actually made the determination. The court rejected this view, stating that it "would likely impose large costs on States, which would face fines and suits for not implementing air pollution prevention plans . . . even though they were not on notice at the time." *Id*. at 68. Thus, the D.C. Circuit looked past the plain language of the CAA which mandated that the EPA act within a certain time period, and refused to retroactively punish a state for failing to do something that it was aware needed to be done. *Id*.

Similarly, it would unfairly burden the States and the EPA to find that the States' failure to submit their $PM_{2.5}$ SIPs by June 14, 2011 triggered the EPA's duty to make a deficiency finding under § 7410(k)(1)(B). On June 14, 2011, the Implementing Rule governed the States' actions and informed the States that, because the EPA had concluded that $PM_{2.5}$ SIPs were governed by Subpart 1, they had 3 years from the date of designation as a non-attainment area to submit their $PM_{2.5}$ SIPs. *See* 72 Fed. Reg. at 20,589. As the EPA is the agency charged with implementing the CAA, the States were entitled to rely on the Implementing Rule promulgated by the EPA in scheduling the pace with which they would proceed in developing their $PM_{2.5}$ SIPs. *See Vigil v. Leavitt*, 381 F.3d 826, 834 (9th Cir. 2004) (noting that Congress has given the EPA rulemaking authority for the CAA).

The *NRDC* Decision was not issued until January 2013, which was the earliest possible time that the States could have become aware that their $PM_{2.5}$ SIPs should

have been submitted in accordance with Subpart 4.  To hold that the States violated the CAA by failing to submit their PM$_{2.5}$ SIPs by June 14, 2011 would be to punish them for not meeting a deadline of which they were not aware at the time the deadline passed. The case law implementing the CAA does not encourage such retroactive punishment. *See Sierra Club*, 285 F.3d at 68.

An important aspect of the CAA is each state's "wide discretion" in formulating its SIP.  *United Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976).   "[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation."  *Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).  If a state submits a timely and complete SIP, the Federal Government's role in implementing the CAA is confined to the ministerial function of reviewing SIPs for consistency with the Act's requirements.  *See* 42 U.S.C. § 7410(k)(3) ("[T]he [EPA] Administrator *shall* approve [a SIP or SIP revision] as a whole if it meets all of the applicable requirements of this chapter." (emphasis added)); *see also Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 587 (5th Cir. 1981) ("The great flexibility accorded the states under the Clean Air Act is . . . illustrated by the sharply contrasting, narrow role to be played by EPA.").  "This division of responsibility between the states and the federal government 'reflects the balance of state and federal rights and responsibilities characteristic of our federal system of government.'"  *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (quoting *Fla. Power & Light Co.*, 650 F.2d at 581).

Were the Court to hold that June 14, 2011 was the States' deadline to submit their $PM_{2.5}$, this division of responsibility would be upset.  As this deadline has long since passed and the States are yet to file a $PM_{2.5}$ SIP that complies with Subpart 4, the EPA would be required to issue its finding of non-compliance in accordance with § 7410(k)(1)(B).  This deficiency finding would then trigger the EPA's obligation under § 7410(c)(1) to begin promulgating a Federal Implementation Plan for the non-attainment areas.  The EPA would therefore transition from its limited role ensuring that the States' SIP complies with the $PM_{2.5}$ NAAQS, to fashioning an entire federal plan for regulating the States' emissions of $PM_{2.5}$ particles.  Due to no fault of their own, the States would be denied the "wide discretion" they are afforded under the CAA to implement whatever mix of emission limitations deemed best suited to their particular situation.  This unfair result is not warranted here.  *See Sierra Club*, 285 F.3d at 68 (holding that retroactive application of EPA rules must be reasonable and should be applied sparingly).

Because the *NRDC* Decision did not vacate the EPA's Implementing Rule that existed on June 14, 2011, the States were not obligated to file their $PM_{2.5}$ SIPs at that time.  Therefore, the States' failure to file the SIPs by that date did not trigger the EPA's obligation to issue a finding of non-compliance no later than December 14, 2011.  Moreover, retroactive application of Subpart 4 to impose deadlines of which the States were not previously aware would be unfair and contrary to the state/federal balance outlined in the CAA.  Accordingly, the Court finds that  Plaintiff has failed to show that the EPA has missed a non-discretionary deadline and, therefore, this Court lacks subject matter jurisdiction over this case.

12

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 8) is

GRANTED for lack of subject matter jurisdiction.  Plaintiff's remaining claim is

DISMISSED WITHOUT PREJUDICE.  The Clerk shall enter judgment in favor of

Defendant.  Each party shall bear her or its own costs.[2]

Dated this 11th day of March, 2014.

BY THE COURT:

William J. Martinez
United States District Judge

---

[2]  While costs are typically to be awarded to the prevailing party as a matter of course, *see* Fed. R. Civ. P. 54(b), the Court is permitted to decline to award costs when the issues in a case were close and complex, and are of significant public importance.  *See Ass'n of Mexican-Am. Educators v. State of Cal.,* 213 F.3d 572, 591 (9th Cir. 2000).  The Court finds that this exception applies to this case.